[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 13-15860
Non-Argument Calendar

————————————————

D.C. Docket No. 9:11-cr-80165-KLR-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANES JOSEPH,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Florida

————————————————

(July 7, 2014)

Before HULL, PRYOR and MARTIN, Circuit Judges.

PER CURIAM:

Following his convictions on charges arising out of a conspiracy to smuggle firearms to Haiti, Anes Joseph appeals the district court's denial of his 2013 motion for a new trial under Federal Rule of Criminal Procedure 33. After review, we affirm.[1]

## I. BACKGROUND FACTS

### A.    2012 Trial and 2013 Direct Appeal

In February 2012, Joseph was convicted of conspiring to buy and illegally transport firearms from the United States to Haiti, in violation of 18 U.S.C. § 371 (Count 1); shipping a firearm without notice to the carrier, in violation of 18 U.S.C. §§ 922(e), 924(a)(1)(D), and 2 (Count 2); making a false written statement in connection with the purchase of a firearm, in violation of §§ 922(a)(6) and 924(a)(2) (Count 4); and attempting to illegally export firearms to Haiti, in violation of 18 U.S.C. §§ 554(a) and 2 (Count 5).

On September 23, 2013, on direct appeal, this Court affirmed Joseph's convictions on Counts 1, 2, 4, and 5. United States v. Joseph, 530 F. App'x 911 (11th Cir. 2013).[2]

---

[1]We review the denial of a motion for a new trial for an abuse of discretion. United States v. Dortch, 696 F.3d 1104, 1110 (11th Cir. 2012), cert. denied, 133 S. Ct. 993 (2013).

[2]Defendant Joseph was also convicted of Count 3, which charged him with attempting to transfer a firearm to an out-of-state resident, in violation of 18 U.S.C. §§ 922(a)(5), 924 (a)(1)(D). As to Count 3, we vacated his conviction because Count 3 failed to allege a completed § 922(a)(5) offense, but instead alleged only an attempt, which was not prohibited under the statute. Joseph, 530 F. App'x at 917-18. We remanded to amend the judgment and

**B.    Motion for a New Trial**

Subsequently, on November 25, 2013, Joseph filed his motion for a new trial in the district court.  Joseph's motion argued that he had obtained "newly discovered evidence" in the form of an affidavit from his brother Keslin.  Keslin did not testify at Joseph's trial.  We review the evidence at trial and then what Keslin's affidavit now says.

**C.    Trial Evidence**

The trial evidence amply established Joseph's guilt.  In August 2011, Department of Homeland Security ("DHS") agents inspected a dump truck waiting at the Port of Palm Beach to be shipped to Haiti and discovered twelve firearms hidden in various barrels inside the truck.  All the firearms were wrapped in the same way, using paper towels and Saran wrap.  The agents also found nine gun cases, hidden separately.

Defendant Joseph was listed as both the shipper and the receiver on the truck's shipping documents, but none of the firearms were disclosed on the contents list.  The truck was titled in Defendant Joseph's name, but actually belonged to his brother Keslin, who had purchased it two months before.  Nine of the twelve firearms found inside the truck were purchased within the last two

---

delete Count 3, id. at 928-29, which the district court did on October 28, 2013.  On November 12, 2013, Joseph appealed the amended judgment, and we affirmed on June 24, 2014.  See United States v. Joseph, ___ F. App'x ___, No. 13-15193, 2014 WL 2853750 (11th Cir. June 24, 2014).

3

months.  All nine firearms were Glocks.  Defendant Joseph purchased three (Glock 17s), and his brother Keslin purchased the other six.  The owner of a tire shop told agents he saw Defendant Joseph, his brother Keslin, and their cousin Kempest Lauricin loading the truck while it was parked at the shop.

Later, DHS agents arrested Defendant Joseph at the airport as he waited to board a flight to Haiti.  The shipping documents for the dump truck were found in Defendant Joseph's carry-on luggage.

After being advised of his Miranda rights, Defendant Joseph admitted buying the three Glock 17s the day after he lost his job as a security guard, wrapping the guns in paper towels and plastic wrap, placing guns' cases in a separate package, and instructing his brother Keslin to put the packages in the dump truck.  Defendant Joseph said he originally bought the three guns for himself, but then decided to send them to his cousin in Haiti.  Bank records revealed that when Defendant Joseph lost his job, he had no other sources of income. When asked why he needed three Glock 17s for his own use, Joseph responded that he loved guns.

Additional trial testimony suggested that Defendant Joseph, Keslin, and Lauricin may have previously shipped guns to Haiti.  Specifically, in February and March 2001, the three men all bought multiple firearms.  Defendant Joseph bought two Glock 17s.  Although Defendant Joseph claimed that he had reported his two

4

guns stolen, no police report could be located.  In April 2011, Lauricin shipped a Toyota Land Cruiser to Haiti out of the Port of Palm Beach.

Finally, a government expert explained that a Glock firearm would sell in Haiti for three times its retail value in the United States, that the vast majority of guns illegally smuggled out of the United States were Glocks, and that people would rarely buy multiple Glocks of the same model for their own use.

In closing arguments, the defense contended that Defendant Joseph acted separately from his brother and cousin in buying and wrapping the three Glock 17s and then gave them to his brother to put on the truck.  Based on the evidence presented, the jury convicted Defendant Joseph on all charges.

## D.    Brother Keslin's Affidavit Dated September 23, 2013

In the affidavit filed almost two years after trial, Keslin averred that: (1) Keslin planned to ship the dump truck to Haiti with firearms in it; (2) he carefully concealed the firearms in the truck, including the three firearms purchased by Defendant Joseph; (3) Defendant Joseph knew only of his own three firearms, and had no knowledge of the other firearms hidden in the truck; and (4) Defendant Joseph "was not involved in this crime and knew nothing of [Keslin's] criminal intentions and actions."

The district court denied Joseph's motion for a new trial and subsequent motion for reconsideration.

## II.  DISCUSSION

**A.    Rule 33**

Under Rule 33, a defendant may file a motion for a new trial based on newly discovered evidence within three years after the verdict, and the district court may grant a new trial in the interest of justice.  Fed. R. Crim. P. 33(a), (b)(1).  To succeed on such a motion, the defendant must show that: "(1) the evidence was discovered after trial, (2) the failure of the defendant to discover the evidence was not due to a lack of due diligence, (3) the evidence is not merely cumulative or impeaching, (4) the evidence is material to issues before the court, and (5) the evidence is such that a new trial would probably produce a different result." United States v. Jernigan, 341 F.3d 1273, 1287 (11th Cir. 2003) (quotation marks omitted).

The failure to satisfy any one of these elements will defeat a motion for a new trial.  United States v. Starrett, 55 F.3d 1525, 1554 (11th Cir. 1995).  "Motions for a new trial based on newly discovered evidence are highly disfavored" and "should be granted only with great caution."  United States v. Campa, 459 F.3d 1121, 1151 (11th Cir. 2006) (en banc) (quotation marks omitted).  "Indeed, the defendant bears the burden of justifying a new trial."  Id. (quotation marks omitted).

**B.    Defendant Joseph's Motion**

6

Here, the district court did not abuse its discretion in denying Defendant Joseph's motion for a new trial. We need not decide if the first two prongs of the test set forth above are satisfied, which are that brother Keslin's testimony in the affidavit (1) was only discovered after trial and (2) could not have been discovered earlier with diligence. Instead, we can readily say that Defendant Joseph has not satisfied the remaining three elements. The district court correctly found that the evidence was cumulative, immaterial, and, if presented in a new trial, would be unlikely to produce a different result.

For example, Keslin's affidavit was cumulative of Joseph's defense—as evidenced by Joseph's post-arrest statement and argued by defense counsel in closing—that Joseph acted independently of his brother and cousin. Keslin's affidavit supported Joseph's defense that he knew only that his own three firearms were on the truck.

More importantly and alternatively, Keslin's affidavit would be unlikely to produce a different result. Specifically, as to the conspiracy charge in Count 1, the affidavit does not contradict Joseph's own admission that he purchased three Glock 17s, wrapped them in paper towels and plastic wrap, placed their gun cases in a separate bag, and instructed Keslin to put the guns and gun cases on the truck bound for Haiti. Keslin's affidavit also does not contradict Joseph's admission that he was sending the three Glock 17s to his cousins in Haiti. Thus, Defendant

7

Joseph admitted to the elements of a conspiracy under 18 U.S.C. § 371, namely voluntarily entering into an agreement with Keslin to place three Glock 17s on a truck bound for Haiti, and, in furtherance of that agreement, committing the overt act of wrapping the guns in paper towels and plastic wrap. See United States v. Broughton, 689 F.3d 1260, 1277 (11th Cir. 2012).

The fact that Joseph may not have known about Keslin's other nine guns on the truck is immaterial given that a defendant need not know all the details of, or participated in all aspects of, the scheme and, in fact, his participation can even be slight by comparison to other conspirators. See United States v. Vernon, 723 F.3d 1234, 1273 (11th Cir. 2013).

Likewise, as to the charges in Count 2 that Joseph unlawfully shipped firearms and in Count 5 that he attempted to illegally export the firearms to Haiti, Joseph admitted knowingly causing his three Glock 17s to be placed on the truck that he was shipping to his cousins in Haiti and that his cousins were not licensed importers, manufacturers, dealers, or collectors. See 18 U.S.C. §§ 554(a), 922(e). And, Joseph's name was listed on the shipping documents, which did not provide written notice that the Glock 17s were being shipped on the truck. See id. § 922(e). Keslin's affidavit does not contradict this evidence.

As to the charge in Count 4 that Joseph made a false statement in relation to a firearms purchase, Keslin's affidavit says nothing about Joseph's intent on July

23, 2011, when he filled out federal Form 4473, indicating he intended to buy the three Glock 17s only for himself.  See 18 U.S.C. § 922(a)(6).

As the government points out, overwhelming evidence was presented at trial that Defendant Joseph was a knowing participant with both Keslin and Lauricin in a conspiracy to smuggle all twelve guns into Haiti, including: (1) the other nine guns were wrapped in the same manner as Joseph's three guns; (2) Joseph bought his three, identical guns for about $1,600 in cash the day after he was fired from his job, even though he had very little money in the bank; (3) when he bought the three guns, Joseph indicated, that they were for his personal use even though three weeks later they were found on a truck bound for Haiti; (4) Joseph had bought two more identical guns about four months earlier, in March 2011, which he also claimed were for his personal use, but then conveniently claimed were stolen, although no police report could be found; (5) Joseph admitted to, and was seen, loading the truck with Keslin and Lauricin; and (6) according to an expert, the Glocks were commonly smuggled guns that were worth much more in Haiti than in the United States.  But, the evidence at trial against Joseph was such that, even accepting as true the affidavit's assertion that Joseph knew only about his own guns on the truck, and was unaware of the other nine guns placed there by Keslin and Lauricin, the jury still would have found Joseph guilty of all four counts.

Accordingly, Defendant Joseph failed to establish all the elements necessary to succeed on a Rule 33 motion for a new trial.

**AFFIRMED.**